UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
PETER McCLUSKEY,

                       Plaintiff,

                                                       **MEMORANDUM AND ORDER**

        - against -                                          19-CV-7060 (RRM) (ARL)

SAMUEL SPITZBERG, Director, Office of Temporary
and Disability Assistance, in his individual capacity, *et al.*,

                       Defendants.
------------------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, Chief United States District Judge.

      Since 2012, plaintiff Peter McCluskey has brought four civil rights actions in this Court, complaining about the Nassau County Department of Social Services' refusal to take into consideration anticipated medical and dental expenses which have not yet been incurred in calculating his income and his SNAP benefits (formerly known as food stamps). McCluskey now moves for a preliminary injunction, seeking an order directing the OTDA to amend a regulation, 18 N.Y.C.R.R. § 387.12(c), and its SNAP Application/Recertification Form, LDSS-4826, "to comply with federal law." For the reasons set forth below, that motion is denied.

                                                     **BACKGROUND**

      The Court assumes familiarity with this action and with the other cases McCluskey has previously brought in this district: *McCluskey v. Nassau County Department of Social Services*, No. 12-CV-3852 (JFB) (ARL); *McCluskey v. Imhof*, No. 17-CV-5873 (RRM) (ARL), and *McCluskey v. Roberts*, No. 19-CV-2386 (RRM) (ARL). In the interests of brevity, the Court will recap only those facts necessary to provide context for this memorandum and order.

Eligibility for SNAP benefits is determined based on income, minus certain exclusions and deductions. *See* 7 U.S.C. § 2014(c). One of those deductions is the "Excess medical expense deduction," set forth in 7 U.S.C. § 2014(e)(5). Subsection A of that provision states:

> A household containing an elderly or disabled member shall be entitled, with respect to expenses other than expenses paid on behalf of the household by a third party, to an excess medical expense deduction for the portion of the actual costs of allowable medical expenses, incurred by the elderly or disabled member, exclusive of special diets, that exceeds $35 per month.

Subsection B(i) requires state agencies to "offer an eligible household under subparagraph (A) a method of claiming a deduction for recurring medical expenses that are initially verified under the excess medical expense deduction in lieu of submitting information on, or verification of, actual expenses on a monthly basis." While this method is not prescribed by the statute, subsection B(ii) dictates, among other things, that the method "shall … (II) rely on reasonable estimates of the expected medical expenses of the [eligible elderly or disabled household] member for the certification period (including changes that can be reasonably anticipated based on available information about the medical condition of the member, public or private medical insurance coverage, and the current verified medical expenses incurred by the member) …."

In New York State, the methodology for calculating net monthly income is set forth in 18 N.Y.C.R.R. § 387.15. Under this methodology, one must "[d]etermine if the household is entitled to an excess medical deduction as described in section 387.12(c)" and, "[i]f the medical expenses exceed $35, … subtract that portion which exceeds $35." 18 N.Y.C.R.R. § 387.15(a)(4). Section 387.12(c) provides that "excess medical deductions" from household income consist "of that portion of medical expenses, excluding special diets, which are in excess of $35 per month and incurred by a household member who meets the definition of elderly (age

2

60 and older) or disabled ….." However, section 387.12(c) does not delineate a method of claiming a deduction for recurring medical expenses.

McCluskey is an elderly resident of Nassau County, who has been receiving food stamps since 2005. McCluskey's SNAP benefits are recertified once every two years. In connection with that recertification, he must submit a form – LDSS-4826 – which has been created by defendant Office of Temporary and Disability Assistance ("OTDA"), the New York state agency charged with overseeing the administration of SNAP benefits.

The Court will take judicial notice of the fact that the LDSS-4826 (available at https://otda.ny.gov/programs/applications/4826.pdf) is a ten-page form, including an unnumbered cover page. The cover page and the first numbered page provide information about the application process, which includes 1) completing the eight-page SNAP Application/ Recertification form that follows and 2) submitting to an interview.[1] The form prompts the applicant to provide information about household income, resources, and expenses.

Two of the questions under heading "Living Arrangements and Expenses" pertain to the excess medical deduction. The first inquires: "Are you, and/or anyone living with you, disabled or at least age 60?" (LDSS-4826 at p. 4.) The second reads: "If so, does such person have medical bills?" (*Id.*) The form instructs those applicants who answer the second question in the affirmative to explain "what they are for, how much and who is responsible for payment." (*Id.*)

This Action

In his complaint in this action, McCluskey alleges that on July 4, 2019, he submitted unspecified "Medicare documents" to the Nassau DSS in an effort to increase his SNAP benefits. (Complaint (Doc. No. 1) at ¶ 7.) McCluskey alleges that these documents "listed anticipated

---

[1] According to page 1 of the form, the interview is generally conducted in person, although telephone interviews may be conducted under certain circumstances.

medical expenses," (*id.* at ¶ 9), and "established [his] new total … out-of[-]pocket recurring medical expenses as $8,953 in the certification period," (*id.* at ¶ 8). McCluskey asserts that these documents established that he was eligible for "the maximum allowable SNAP benefit of $194 per month for a single individual." However, Nassau DSS not only refused to grant him the maximum amount but reduced his monthly benefit, noting that he had "not submitted actual medical bills with his change request." (*Id.*)

McCluskey asserts that "[f]ederal law allows a SNAP benefits increase based on anticipated medical expenses," (*id.* at ¶ 9), and that the "deprivation of SNAP benefits based on a medical bill requirement is an application of [a] State Regulation … [which] requires that the medical bills for the medical deduction 'must be incurred,'" (*id.* at ¶ 10). Although paragraph 10 of the complaint identifies that regulation as 18 N.Y.C.R.R. § 387.22(c), the Court notes that no such subsection exist. Presumably, McCluskey is referring to 18 N.Y.C.R.R. § 387.12(c) – the subsection which defines "excess medical deductions." McCluskey also implies that this state regulation is "in conflict with federal law" because it does not provide a method of claiming a deduction for recurring medical expenses, as required by 7 U.S.C. § 2014(e)(5)(B)(ii). (*See* Complaint at ¶ 10.)

The Motion for a Preliminary Injunction

McCluskey now moves for a preliminary injunction, seeking an order directing the OTDA to amend 18 N.Y.C.R.R. § 387.12(c) and the LDSS-4826 form "to comply with federal law."[2] Although McCluskey has submitted a four-page memorandum of law in support of his motion ("McCluskey's Memo"), that submission largely repeats the allegations of the complaint.

---

[2] Although McCluskey's Notice of Motion (Doc. No. 19) states that this motion seeks to amend "Form LDSS-4816," the Memorandum of Law in support of the Motion for Preliminary Injunction (Doc. No. 19-1) refers to the "SNAP application/recertification form (LDSS-4826)." The Court assumes that the reference to LDSS-4816 is a typo.

4

McCluskey contends that "[a]s a matter of law, households, such as plaintiff, are eligible for consideration of anticipated medical expenses under … 7 U.S.C. § 2014(e)(5)(B)." (McCluskey's Memo at 2.) Yet, "neither the SNAP application/recertification form (LDSS-4826), nor the state regulation instructions to local districts (18 NYCRR 387.15(a)(4))" – which dictate that local DSS agencies "[d]etermine if the household is entitled to an excess medical deduction as described in section 387.12(c)" – "consider anticipated medical expenses in the NYS SNAP benefit calculation." (McCluskey's Memo at 2.) Rather, section 387.12(c) requires "that the medical deduction be based on incurred medical expenses as opposed to anticipated expenses" and "does not even provide a method for determining the medical deduction." (McCluskey's Memo at 3.)

Although McCluskey acknowledges that he has been litigating this issue since at least September 2018, (*id.* at 3), McCluskey contends that he has established "that he is likely to suffer irreparabl[e] harm" unless this Court issues "a preliminary injunction ordering the OTDA officials to amend the appropriate regulations and the SNAP application form to bring them into compliance with federal law," (*id.* at 4.) However, his motion does not provide any facts relating to his case. Instead, McCluskey's Memo contains speculation regarding the adverse effects the state's policies may have on COVID patients and cites to *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970), and two cases from the United States District Court for the Southern District of New York for the proposition that denying welfare benefits to a qualified recipient may constitute irreparable harm.

## STANDARD OF REVIEW

"District courts may ordinarily grant preliminary injunctions when the party seeking the injunction demonstrates (1) that he or she will suffer irreparable harm absent injunctive relief,

5

and (2) either (a) that he or she is likely to succeed on the merits, or (b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005). "A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir.1999)). "To satisfy the irreparable harm requirement, [p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005).

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citing 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed. 1995) (emphasis in *Mazurek*). "The burden is even higher on a party … that seeks 'a mandatory preliminary injunction that alters the status quo by commanding some positive act, as opposed to a prohibitory injunction seeking only to maintain the status quo.'" *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (quoting *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4. (2d Cir. 2010)). "A mandatory preliminary injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very

6

serious damage will result from a denial of preliminary relief." *Id.* (internal quotation marks omitted).

## DISCUSSION

In this case, McCluskey has not met this lofty burden of persuasion. First, his claim that 18 N.Y.C.R.R. § 387.12(c) somehow violates federal law is entirely baseless. The language of that regulation tracks the language of 7 U.S.C. § 2014(e)(5)(A). That federal statutory provision states: "A household containing an elderly or disabled member shall be entitled, with respect to expenses other than expenses paid on behalf of the household by a third party, to an excess medical expense deduction for the portion of the actual costs of allowable medical expenses, incurred by the elderly or disabled member, exclusive of special diets, that exceeds $35 per month." The state regulation, which is entitled "Excess medical deductions," permits "[d]eductions consisting of that portion of medical expenses, excluding special diets, which are in excess of $35 per month and incurred by a household member who meets the definition of elderly (age 60 and older) or disabled …." McCluskey has not explained how 18 N.Y.C.R.R. § 387.12(c) is in any way inconsistent with 7 U.S.C. § 2014(e)(5)(A).

To the extent that McCluskey is arguing that 18 N.Y.C.R.R. § 387.12(c) does not provide "a method of claiming a deduction for recurring medical expenses that are initially verified under the excess medical expense deduction in lieu of submitting information on, or verification of, actual expenses on a monthly basis," as required by 7 U.S.C. § 2014(e)(5)(B)(i), McCluskey has not offered any evidence that he has "recurring medical expenses" that have been "initially verified." To be sure, McCluskey's complaint alleges that he submitted Medicare documents to Nassau DSS on July 4, 2019, which "established Plaintiff's new total … out-of[-]pocket recurring medical expenses as $8,953 in the certification period." (Complaint at ¶ 7.) However,

McCluskey has offered no evidence to substantiate this conclusory allegation or to establish that the medical expenses were, in fact, recurring. Moreover, McCluskey does not allege, much less establish, that the allegedly recurring medical expenses were "initially verified under the excess medical expense deduction." *See* 7 U.S.C. § 2014(e)(5)(B)(i). Accordingly, to the extent McCluskey is seeking to amend 18 N.Y.C.R.R. § 387.12(c) to provide the "method of claiming a deduction for recurring medical expenses that are initially verified" required by 7 U.S.C. § 2014(e)(5)(B)(i), he has not established that he is qualified to use that method and that he will be irreparably harmed if that amendment is not made.

Similarly, McCluskey does not explain how the LDSS-4826 form violates federal law or how he will be harmed if the form is not amended. First, although the form inquires only about "medical bills" and makes no mention of anticipated medical expenses, McCluskey has not cited any federal authority dictating the language of a SNAP application or recertification form. Second, the inquiry about "medical bills" is calculated to elicit information about the "actual costs of allowable medical expenses … incurred by the elderly" applicant – the costs which can be deducted as excess medical expenses. *See* 7 U.S.C. § 2014(e)(5)(A). While the form does not inquire about recurring medical expenses, *see* 7 U.S.C. § 2014(e)(5)(B)(i), or "any anticipated changes in … medical expenses that can be reasonably expected to occur during the certification period," *see* 7 C.F.R. § 273.10(d)(4), there is nothing to suggest that decisions regarding benefits are calculated solely on the basis of this form. Indeed, instructions accompanying the form indicate that an interview is required for all applicants.

Furthermore, even assuming that the language in the form failed to prompt claimants to report anticipated medical expenses, McCluskey would not be harmed if the form is not changed. McCluskey does not need the prompt; he has been reporting, and litigating about, anticipated

8

medical expenses since at least 2012. Accordingly, McCluskey will not be irreparably harmed if the form remains unchanged.

## CONCLUSION

For the reasons set forth above, McCluskey's motion for preliminary injunctive relief is denied. The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to McCluskey and to note that mailing on the docket sheet.

SO ORDERED.

Dated: Brooklyn, New York  *Roslynn R. Mauskopf*
November 16, 2020

_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge